for the appellate, Mr. O'Neill. May I proceed? May it please the court, good afternoon. I want to move right into the issue of the excessive fine clause under the 8th Amendment of the United States Constitution. The issue for us in this case is that we believe that a not done appropriately is an excessive fine under the 8th Amendment. In this case, we stipulated a trial for trial strategy purposes that probable cause had been established by the state to seek forfeiture. The burden shifted to us by a preponderance of the evidence to show that in fact there was no reason for the forfeiture order to be entered. That leaves us at the appellate level with arguing excessive fine issues and also the issue of conviction and how it played into the judge's decision. With regard to the excessive fine issue, the case that we believe is most relevant is the case of Waller v. the 1989 Ford F-350 truck in which the court laid out a test for determining whether or not an excessive fine had been imposed against the defendant. The question for the court in that test was whether or not, looking at point two, whether the property was an integral part of the commission of the crime. There was substantial testimony at trial, and the court has the transcript and has read that, that every bit of the testimony at trial, with the exception of the probable cause portion of the proceeding, was that the guns that were seized were used for sporting and hunting purposes and sporting and hunting purposes only. There was not one piece of evidence at trial that any of these guns were used to further the cannabis grow that was found in the defendant's house at the time the search warrant was executed. There may not have been evidence, well, let me suggest this. Evidence of them being found uncased and loaded would be evidence contrary to their use, exclusive use as hunting weapons. Would that be true? I don't dispute that, Justice Harris. The issue in this particular case was that the defendant, the search warrant was executed because the defendant had been firing the weapons outside the home in an intoxicated state in the middle of the night, firing the weapons in the backyard. The neighbors called the police. The police came to the home. He would not come out. They got a search warrant. They went in and they got him. That was the testimony at trial as to why the weapons were loaded, because he had loaded those that evening for that purpose, to fire them in the backyard. The testimony by the defendant was he lived alone, that he didn't have anybody else in the house that he had to worry about getting access to the weapons, therefore sometimes they were cased and sometimes they were uncased, but that he kept loaded sporting clips for, particularly with regard to the assault rifle, he kept loaded ammunition clips for the purpose of taking it to the shooting range with his father and sometimes his son and using it for that purpose. But I go back to the testimony as to whether or not there was any causal link, direct link, indirect link, whatever you want to call it, between the possession of the weapons and the commission of the offense of growing cannabis in his home. And of course the court is aware that he did not ultimately plead guilty to the cannabis growing, but guilty to reckless discharge of a firearm. That in itself is not dispositive as to whether or not the property could be forfeit, obviously, but it is telling as to what was going on that night with regard to those guns. The issue of whether the criminal activity involving the defendant's property was extensive in terms of time and or spatial use. Again, the testimony at trial was that these guns had been, that he had been growing cannabis for his own use for more than 20 years and that these guns had been acquired from 2011 to 2013, two of which were gifts from his father, who there was no testimony, had any idea that there was a grow going on in his home where the defendant resided. So again, there was no relationship between the time frame of the cannabis grow, which exceeded two decades, and the couple of years in which he had developed an interest in sporting weapons and had been acquiring those guns for both that purpose and also for hunting. So we believe that the value, and I believe the First District has ruled that the value of the property in and of itself is not indicative of whether an excessive fine has been imposed. It's telling, but it's not controlling. We believe that the fact that the guns, whether they had a value of a couple thousand dollars or $200,000, it was an excessive fine under the Eighth Amendment because there was no nexus between the crime and the taking of the property. So that's the point I want to make on the Eighth Amendment. In turning to the issue of what happened at trial with Judge Breaux's questioning of the state, you may recall from the testimony that both my client and his father testified that if the government were to, or if the judge were to order a return of the property, the property would return to his father, not to my client. The issue for the court was its concern that because my client had pled guilty to a felony and had a felony conviction, that he could not physically possess these weapons. It was never the intention of the defendant for him to ever go to the sheriff's office here in Sangamon County where these weapons were being stored and physically taking possession of these weapons. Just as in any property transfer that occurs at the Sangamon County Jail or at the Sangamon County Sheriff's Office or the police department, wherever it occurs, any property owner can assign that property to another person who can then go and retrieve that property. My client never had to possess those weapons in order for them to be returned pursuant to the judge making a finding that they weren't forfeitable. The state indicated a number of times when the judge questioned them about this issue that there was no mechanism whereby, under Illinois law, that the guns could be transferred back to my client. However, as the court is aware in the United States v. Miller case, while the facts were different as to why the forfeiture was vacant, the reality is that the federal court said it is not necessary for the defendant with a felony conviction to take physical possession of these items. They can be held by a trustee and sold. They can be transferred to another person. There are other ways to get the property to a third party without the defendant violating his prohibition on possessing a weapon. The judge was troubled by this at the trial. He asked the state repeatedly about this. And what's telling about the judge's thought process in this matter was that even after he ordered the forfeiture and said that he believed that the property should be forfeited, he went on to say in his very last parable, in his very last remark, but again just for the record, that does not preclude some sort of agreement with respect to these weapons being turned over by the people by agreement to Mr. Hatcher II, who is Mr. Hatcher's father. So again, that's my ruling. So even after the court inquired the state a couple of times as to whether this property could be transferred legitimately or legally without my client violating his conditions of his conviction, the court ultimately ruled that, okay, I'm going to find that there is a nexus. But then went right on to say, but if there's an agreement to go ahead and give the property to his father, that's okay too. And so it's clear to me that the court was laboring under a misunderstanding as to whether the property could be transferred to a third party. What we are asking the court to do is remand this proceeding back to the trial court for Judge Breaux to make a determination as to whether or not the law would allow him to transfer the guns to a third party for possession and to vacate the forfeiture order. That's what we're asking the court to do. We believe that Judge Breaux simply was misinformed as to that particular issue and that had he known that he could have transferred these guns to a third party, he would have granted our request to vacate the forfeiture. I'm finished with my argument if you have any questions, but those are the points I wanted to reiterate to the court. Mr. Fultz, did you say that your client lives with his father? He does not. My client lives on South Park Street here in Springfield. His father lives in Rochester. And to my knowledge, and I don't believe there's any testimony that contradicted this, his father had no idea that this Breaux operation was going on in the basement of the home when he purchased those weapons for his son. So it was clear that he didn't buy the weapons for his son to assist him in protecting the Breaux operation, which is what the state kept arguing, that that was the whole reason why he had the guns. I would note on that point that when Officer Dane testified at the trial level at the forfeiture hearing, he testified that he had no evidence, no evidence whatsoever that my client was selling marijuana or in any way using these weapons to protect the marijuana Breaux operation. He simply said that based on my understanding and knowledge of how criminal enterprises, drug enterprises operate, these guns were, that guns and marijuana or guns and drugs go together. That was the extent of the testimony that established probable cause. Now I stipulated to that at trial because Judge Breaux is a former criminal offense attorney. And I didn't want to lose credibility with the court by saying, well Judge, I don't think that makes any sense, there's no logic to that, because we all know that to be true. We've been around enough to know that it's not uncommon to see narcotics and guns together. And so I didn't want to lose credibility with the trial court by saying that I didn't think there was any probable cause, which is why I stipulated to it. Which leaves me with the excessive fines argument on the appeal, because I can't go back and say there was no probable cause. Thank you. Mr. O'Neill. May I please report? No. The problem that the stipulation of probable cause brought about at the trial level is that the state then had no reason to really delve into the connection between the guns and the marijuana grow operation. There was probable cause stipulated to, so there were a few questions directed towards the connection between the drug operation and the guns found. However, there was really no reason to dwell on it as probable cause was stipulated to. That being said, there was also testimony that the guns were found loaded and ready to fire by the police in this case. Of course, the defendant's testimony and his family member's testimony was that the guns were for hunting and shooting sports. Of course he's not hunting and shooting in his own master bedroom or in his own house. However, he is throwing at least 900 grams of cannabis in his house. So it was a reasonable inference for the trial court to make that indeed these guns were for the protection or at least the facilitation, which is defined in that Ford F350 truck case as to make easier or less difficult. There was testimony from an experienced police officer that guns were indeed used to secure and protect drug operations. In this case it was a rather large drug operation, so presumably it was worth quite a bit of money. Obviously you can't call the police if there's an invasion or anything like that on this drug operation. So guns, common sense dictates that these guns were for protection there or for at least facilitation. So that covers the second and third factors from Ford F350 truck case. All these case names sound weird when you say them out loud. The first factor is the one that weighs strongest in favor of forfeiture, that being the balance between the inherent gravity of the offense and the harshness of the penalty. Here, as I stated, there was over 900 grams of cannabis seized. That's a Class II felony with a maximum fine of $200,000. In $5,970 U.S. currency, the second district case I cited in my brief, the appellate court provided a couple of instructive principles for forfeiture cases like this that involve drugs. They stated the drug offenses pose a significant threat to individuals and society and are therefore considered a serious offense. And they stated that society and the courts place a higher priority on real property than on personal property. Of course, the three guns here would be personal property. Finally, for comparison's sake, in that case, the defendant's offense carried a maximum fine of up to $15,000. As I stated, this was a Class II felony with a maximum fine of up to $100,000 if the defendant was convicted. Of course, it's well settled that conviction is not needed for forfeiture proceeding purposes. So this was almost seven times the maximum fine. The $1,200 GMC case, another second district case I cited, stated that the maximum fine for the offense is relevant to determining the gravity of the offense. So clearly here, the gravity of the offense was high and relatively low for the harshness of the penalty. In that $1,200 GMC, the court held that even the car involved there, the $28,000 vehicle, wasn't a grossly disproportionate forfeiture just for the misdemeanor of driving with a suspended license. Here, of course, this was a Class II felony. So the inherent gravity of the offense compared to the harshness weighs strongly in favor of forfeiture. And of course, we already talked about the second and third factors, which are usually looked at together in an instrumentality test, whether the forfeited property had a sufficiently close relationship to the illegal activity. Here, we are dealing with limited testimony to that effect based on the stipulation of probable cause at trial level. However, even saying that the experience of the police officer's testimony was more credible and the trial court was in a much better position to determine the credibility of not just the police officer's testimony but also the defendant's family members. So, because all three factors from Ford, F-350, favor forfeiture, the trial court didn't err in finding that way and there was no excessive fine. As for Argument 2, giving the guns to his father, there's no Illinois case that involves a firearm transfer to a family member as a result of forfeiture when that defendant has a felony conviction. Obviously, the defendant, the state, in this case, or the trial court in this case, would somehow need to, at least for a moment, transfer the ownership back to the defendant for him to transfer it to someone else. It's clearly not allowed. There's no Illinois case that even offers that as an option. The defendant conceded this point in his brief and I couldn't find any case in my research either. The United States v. Miller case is a federal case. The defendant cited for persuasive authority. It's easily distinguishable. There, the forfeiture proceeding was untimely and invalid, which brought about the whole reason that the appellate court even brought up the options, one of them being to give the guns to a family member. The forfeiture proceeding was more than 120 days after the seizure in Miller. So the federal court, even the state, acknowledged that it was an invalid forfeiture proceeding. So the federal court suggested options, one of those being to give the defendant's family member, one who was not a convicted felon, the guns. Here, obviously, the forfeiture proceeding was timely, invalid, and again, that's really the only reason the Miller court even brought up these options, was because the forfeiture proceeding itself was invalid. So Miller's inapplicable even as persuasive authority here, and no authority suggests that the court was obligated to look into other options instead of state forfeiture here. There's no authority that suggests the state, or that the trial court, needed to do that, and obviously the trial court followed proper procedures here. Yeah. I think that's all I have. If you have any questions, thank you. Mr. Fultz, rebuttal? Yes, just briefly, thank you. I do want to point out that I respectfully disagree with counsel of the state's representation that the probable cause issue, because it was conceded, that limited the state or somehow constricted the state's evidence on that issue. I didn't concede probable cause until my argument. The trial went forth, the state argued, and then in my argument, I conceded probable cause. They had every opportunity to establish as much evidence for probable cause as they wanted to establish. That's all they could establish, is that guns and drugs seemed to go together. That's all they had. With regard to the issue of the Ford F-350 case, the first problem, the gravity of the offense issue, the testimony of trial, as recorded in the transcript, is that my client used this grove for personal use, that he would sometimes have friends over and let them have some cannabis. There was no evidence of a sale, ever of a sale. The 900 grams included a total of 13 cannabis plants that were cut off at the dirt, and so that was the entire weight of the stem of the plant as well as the entire plant. The testimony was that there were only 90 grams of finished product found in the home, and my client testified that he smoked up to 14 grams a week. So this was not, when you look at the gravity of the offense, it's this is a pothead growing cannabis for his personal use and for close friends' use. That was the evidence of trial. With regard to the statement by the Counsel for the State that there is no Illinois case that allows transfer of this property to a third party, the old saw would be there's nothing that prohibits it either. There is no law that is by legislative intent based on the federal forfeiture statute. United States v. Miller is instructive, not controlled. What the court was faced with there was a situation where we don't have a valid way to take this guy's property, but he's a convicted felon and we can't return the guns to him. And so the court fashioned a remedy to allow that property to be transferred to a third party. That's exactly what we're asking for here. Counsel's representation that even for a moment my client would have to possess these weapons is simply inaccurate. He never has to possess the weapons. The court can hold the decision in abeyance until an order is presented to him that requires immediate transfer of the weapons to a third party. There's nothing in the law that prohibits that. And I believe that had the court known that, the court would have ruled in that way, particularly given the court's statement after he did enter his ruling, that he would still like to see some agreement worked out where the guns went to a third party. Thank you. Was there ever any suggestion of selling the guns to a disinterested third party, like What the testimony was is that his dad had a valid point card and he would be willing to take possession of the weapons. There could have been any number of remedies fashioned in that regard. The problem is that Judge Groh could have been thinking, well, if I allow the transfer from the defendant to his father, how do I know that at some point in his possession will be transferred back to the defendant? I agree. That could have been a... So, you know, sale could have been accomplished, right? Right. But that wasn't ever dealt with at the trial level. I will tell you, there was a reason why I didn't interject and try to offer various solutions at trial. Because while the transcript doesn't reflect it, Judge Groh was somewhat credulous that the state's position was that there was no way that these guns could go to a third party. I thought he was going to rule in our favor. So I followed the rule where if it's going your way, keep your mouth shut. And so I was a little bit surprised when that, in hindsight, maybe I should have jumped in. But yeah, I think there are a number of different remedies that could have been fashioned where there would have been no doubt that my client would not have had to possess these weapons or would have never even had the opportunity to possess them. Thank you. Okay, thank you. Let's go to recess. Until later, this is the next case.